CARSTENS PACKING CO. v. UNITED STATES.

No. 674.

District Court, W. D. Washington, S. D.

Sept. 22, 1945.

Kerr, McCord & Carey, of Seattle, Wash. (by R. A. Moen, of Seattle, Wash.), for petitioner.

J. Charles Dennis, U. S. Atty., and Guy A. B. Dovell, Asst. U. S. Atty., both of Tacoma, Wash., for defendant.

LEAVY, District Judge.

Briefly and concisely stated, the fact that is not in dispute at all, is that one of the agencies of the federal government, the W.P.A., leased from the plaintiff the third floor of a building in Seattle, known as the Carstens Building. The lease covered approximately 8,775 square feet. A standard form lease was provided for by the government itself, and approved by the Secretary of the Treasury in the Procurement Division. The rental was to be at $140 a month, and the lease was for a period running from October 28, 1940, to June 30, 1941, with the right of renewal, and the same was renewed by a notice of election to renew on the part of the United States —the first renewal took up immediately at the conclusion of the original lease, which would be June, '41 and then again in '42, then again in '43, but the third year of the life of the lease was not carried through, because an election to surrender was made.

The lease further provided that it could be cancelled by either party upon 30 days' notice in writing. In that manner it was terminated during the life of this lease upon the third renewal of it.

November 12, 1942, the accident in question occurred while the elevator was being used by agents and employees of the United States Government, and while so used was badly damaged by reason of the manner in which it was loaded, by placing thereon a small hand truck, so that it came in contact with the side-wall of the elevator shaft. The lease provided among other things that the lessor would furnish to the government during the occupancy of said premises as a part of the premises, the following: heat, light, water, elevator services, toilet facilities for men and women.

■ The question that we have to determine here in the first instance, it seems to me, is a question as to whether this obligation on the part of the lessor to furnish elevator service, carried an implication that it would be elevator service that included an elevator operator. There does not seem to be any serious contention on the part of the government that such was intended, so if it were not, why of course the elevator was there and it was available for a common use, both to the government as a lessee and the other occupants on the floors below, and the Court so finds. The evidence is undisputed that the elevator was supplied, but without an operator, and the use was a common use, as it had been used by the government in its occupancy of the third floor for a period beginning with the lease, when this accident occurred.

There isn't any question but that the accident was brought about at least in part, and I have no hesitancy in finding that it was brought about as a proximate result, of carelessness on the part of the operators of the elevator, who were the employees of the federal government. Whether the elevator was so constructed or so maintained as to create a situation that resulted in contributory negligence as was found by the Army when the claim was presented to them, presents another question, and in that regard I find that such situation did not prevail. The damage to the elevator, then, was the result of its improper use by employees of the federal government.

It is contended that this resulted in an action ex delicto, and therefore could not be maintained against the government. The plaintiff contends that it is an injury to its property, and it is entitled to be reimbursed because it is an action growing out of a contract, either expressed or implied.

■ Counsel for the government has argued with a great deal of force and ability that this should be treated as an action in tort. The lease, however, has this provision in it,—we must remember the lease is one drawn by the government and therefore is not to be construed with any degree of liberality toward the government because they drafted it, and they provided at the end of the lease that they would restore the premises to the same condition as that existing at the time of entering into the same under this lease which reads: " * * * reasonable and ordinary wear and tear and damages by the elements or by circumstances over which the Government has no control, excepted:"

That covenant in this lease made it necessary, I take it, that if no steps had been taken by the lessor when the government sought to terminate the lease, it make amends for the damage or injury, irrespective of whether it arose out of the careless and negligent conduct of some government employee, or whether it was a direct breach

of some specific covenant in the lease agreement, and I rest my conclusion as to the law on these cases to which I shall refer. I have checked them rather hastily. There has been reference to some of them by counsel for the government. However, the case not cited, which I take to be the leading case on this subject, decided long before the enactment of the Tucker Act, 24 Stat. 505, is a case dating back to 1876. Justice Waite delivered the opinion of the Court and the case (United States v. Bostwick) is found in 94 U.S. 53, 24 L.Ed. 65, and I am reading particularly from page 66, of 94 U.S., because this establishes the law in a situation such as we have here. This was a case where property had been leased by the federal government, such as we have here, and the Court there said:

"There are in this contract no stipulations to take the place of or in any manner restrict this implied obligation on the part of the United States growing out of their relation to the petitioner as his lessees. They had the free and unrestricted right to use the property for any and all purposes, but were bound to so conduct themselves in such use as not to cause unnecessary injury. Whatever damages would necessarily result from a use for the same purpose by a good tenant must fall upon the lessor. All that the relation of landlord and tenant implies in this particular is, that the tenant, while using the property, will exercise reasonable care to prevent damage to the inheritance. * * * If he fails in this, he violates his contract, and must respond accordingly."

█ The following language I want to call to your particular attention, because it is quoted again and again in subsequent opinions:

"The United States, when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf. All obligations which would be implied against citizens under the same circumstances will be implied against them. No lease in form was ever executed in this case; but the contract, followed by the delivery of possession and occupation under it, is equivalent for the purposes of this action to a lease duly executed, containing all the stipulations agreed upon."

Passing from that case to a later one that cites it, found in, D.C., 31 F.2d at page 211, 212, being Crouch v. United States, and being a case in its facts somewhat similar to what we have in this case, the government leased a pile driver, and through the actions of some of the government employees, the pile driver was damaged far beyond ordinary wear and tear for such uses. The Court held there that the action could not be held to be an action in tort, stating: "The fact that the obligation to use due care arises as an implied obligation from the contract cannot change the situation. The suit, therefore, can be maintained under the Tucker Act"—and then they quote the Bostwick case from which I just quoted.

Another case, somewhat later, that it seems to me, throws light upon this, is found in, 2 Cir., 51 F.2d at pages 1010, 1012, Cory Bros. & Co. Ltd. v. United States, and while this is an admiralty case, yet it involves the issue of the government's liability in the lease of property, and the Court there quotes again the Bostwick case and numerous other later cases, with approval, and then it says: "It is apparent that the present action is 'founded upon' a contract, partly written and partly implied from prior dealings entered into with duly authorized representatives of the United States, and brought to enforce alleged obligations of that contract. Such a claim is clearly included within the spirit and language of the Tucker Act."

█ The use to which the government put the property here in question creates a situation where I could not do other than find that the plaintiff is entitled to recover, this being an action ex contractu. There is no showing that the facilities were of such a deficient nature as to be totally unfitted for the purpose for which the lease had been taken. There was some testimony of one witness called by the defendant, who testified there was some movement or swaying of the elevator back and forth, but it had been used daily by the government's agents for a period of more than a year, and continued to be used after the accident. Against that testimony we have that of the inspector, a man skilled in mechanics, and whose duty it is to inspect this elevator, and he said it met the standard required of an elevator to serve the purposes for which it was constructed and for which it was placed in this building, and the government continued to operate the elevator for more than a year after the accident and also renewed the lease, providing for such use.

Under all of the facts, I find that the action is one that rests upon contract, and can be maintained as against the

government, and the amount of loss not being in dispute there—no issue has been made of this, I shall find that it is in that sum prayed for in the complaint, and the plaintiff is entitled to a judgment in such amount.